**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| LUSVY ROXANA AGUILAR GONZALEZ<br>A# 221 441 744,           )<br>           )<br>           Plaintiff,        )<br>           )<br>          v.          )<br>           )<br>JAILER SCOTT MAPLES in his official  )<br>Sheriff/Jailer of Michael L. Beacher Adult )<br>Correction Complex, Clark County Detention )<br>Center,           )<br>TODD LYONS in his official capacity as Acting )<br>Director of Immigration and Customs )<br>Enforcement,         )<br>KRISTI NOEM Secretary of Homeland Security, )<br>PAM BONDI U.S. Attorney General,  )<br>SAMUEL OLSON Field Office Director for ICE )<br>Chicago Field Office,     )<br>           )<br>         Respondents.    ) | No. 4:26-cv-00022-TWP-KMB |

**ORDER DENYING MOTION TO ENFORCE**

This matter is before the Court on Petitioner Lusvy Roxana Aguilar Gonzalez's Motion to Enforce Judgment and to Show Cause Re: Contempt Immediate Hearing Requested. (Dkt. 15). On February 13, 2026, the Court granted Ms. Aguilar Gonzalez's petition for a writ of habeas corpus and ordered Respondents to provide her "an individualized bond hearing as required by § 1226(a) and its regulations" or release her from custody. (Dkt. 11 at 8). That same day, the Court entered final judgment. (Dkt. 12). The instant motion was filed on March 24, and the federal Respondents filed their Response in opposition on April 3, 2026. (Dkt. 16). Ms. Aguilar Gonzalez did not file a reply. The motion to enforce is now ripe for the Court's decision.

1

## I.    FACTUAL BACKGROUND

Ms. Aguilar Gonzalez is detained under the authority of U.S. Immigration and Customs Enforcement ("ICE"). On February 18, 2026, the Indianapolis Immigration Court held a bond hearing pursuant to the Court's order. (Dkt. 15-1). As a result of that hearing, the Immigration Judge denied Ms. Aguilar Gonzalez's request for a change in her custody status, finding that she "failed to meet her burden of establishing that she does not pose a risk of flight" and "failed to establish that there is a condition of release or amount of bond that can ensure her appearance at future hearings or for removal if necessary." *Id.*

### II. Analysis

Ms. Aguilar Gonzalez contends that the bond hearing she received did not comply with the Court's order because (1) the Immigration Judge was not neutral, was unprepared, and failed to develop the record; (2) there was no individualized, *Guerra*-based risk analysis; (3) the burden of proof was improperly placed on Ms. Aguilar Gonzalez; (4) the Immigration Judge did not follow federal regulations; and (5) the Immigration Judge did not consider any alternatives to detention. Ms. Aguilar Gonzalez also asserts that the bond hearing was unconstitutional because she was not afforded due process of law and that institutional bias renders her incapable of receiving a bond hearing that passes constitutional muster from an Immigration Judge.

The federal Respondents counter that they fully complied with the Court's order by providing Ms. Aguilar Gonzalez with an individualized bond hearing at which the decision on her request for bond determination was made on the merits. They also assert that the Court lacks jurisdiction to review the immigration judge's decision and, in the alternative, that the case should be dismissed or stayed for lack of exhaustion.

**A.    Jurisdiction**

The Seventh Circuit has directed that "[w]hen a district court issues a conditional habeas writ, it retains jurisdiction to determine compliance." *Jensen v. Pollard*, 924 F.3d 451, 454 (7th Cir. 2019) (citing *Hudson v. Lashbrook*, 863 F.3d 652, 656 (7th Cir. 2017)). Thus, it appears that the Court can decide whether the Respondents provided Ms. Aguilar Gonzalez the "individualized bond hearing before an immigration judge pursuant to § 1226(a) and its regulations" as ordered. (Dkt. 11 at 8).

However, this must be reconciled with 8 U.S.C. § 1226(e), which provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

Although, at first blush, § 1226(e) appears to preclude this Court's jurisdiction, the statute does not deprive federal courts of jurisdiction to hear constitutional challenges to detention in habeas cases. *Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) ("Section 1226(e) likewise deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions. The district court therefore had jurisdiction under § 2241."). Because Ms. Aguilar Gonzalez raises a due process challenge, the Court finds that § 1226(e) does not bar review of her motion to enforce.

The respondents also briefly invoke another statutory limit on judicial review, which states, in relevant part: "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland

Security." 8 U.S.C. § 1252(a)(2)(B)(ii). However, courts have held that § 1252(a)(2)(B)(ii)—like § 1226(e)—does not apply to constitutional challenges or questions of law. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While § 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA."). At least to the extent Ms. Aguilar Gonzalez challenges her denial of bond on due process grounds, § 1252(a)(2)(B)(ii) is not a jurisdictional bar. The Court therefore proceeds to the question of exhaustion.

### B.      Exhaustion

The respondents acknowledge that no statute requires Ms. Aguilar Gonzalez to exhaust administrative remedies before pursuing her habeas action. "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). There is a "general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id.* at 144–45. The Court has discretion to depart from the general rule and find that "individual interests demand that exhaustion be excused when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir.2002)). Thus, the Court must determine whether exhaustion should be excused in this instance and uses four factors stated above in concluding that exhaustion will not be excused.

4

### 1.    Prejudice from Appellate Timeline

Respondents represent that Ms. Aguilar Gonzalez did not appeal her bond denial. (Dkt. 16 at 2). If she had pursued an appeal, this factor would have weighed against requiring exhaustion. The appellate process can last months, and Ms. Aguilar Gonzalez's detention would continue while the appeal was pending, which would impose a hardship on her family—including her minor U.S. citizen children.

### 2.    Agency Competency

The second individual interest—agency competency—weighs in favor of requiring exhaustion. Ms. Aguilar Gonzalez predominantly relies on due process arguments in this Court, [1] but the crux of those arguments is that the Immigration Judge deprived her of due process by making errors in the  decision, specifically, that she made a decision (1) contrary to the evidence presented, (2) premised on an impermissible burden of proof, (3) without consideration of less restrictive alternatives, and (4) infected by institutional bias. [2] Certainly, the Board of Immigration Appeals ("BIA") has greater expertise than this Court on the questions of how immigration judges should or should not weigh evidence in administrative bond hearings.

---

[1] Ms, Aguilar Gonzalez also argues that the Immigration Judge failed to comply with 8 C.F.R. § 1003.19(d) because the immigration judge considered Ms. Aguilar Gonzalez's likelihood of success on her underlying removal proceedings in making the bond determination. That subsection of the regulation provides:

> Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding. The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service.

Contrary to Ms. Aguilar Gonzalez's argument, the regulation does not forbid Immigration Judges from *considering* likelihood of success on other pending immigration applications. It forbids *collapsing* the bond hearing into a deportation or removal hearing or proceeding, which the Immigration Judge did not do. Instead, she based her decision on information available to her, which the regulation explicitly permits.

[2] The Court addresses the argument on institutional bias in the following section.

This analysis is not changed by Ms. Aguilar Gonzalez's argument that the Immigration Judge violated the Constitution by placing the burden on her to prove that release was warranted. "The rationale for" requiring exhaustion "may be even stronger in the context of a case, like this one, that raises a constitutional question." *In re Establishment Inspection of Kohler Co.*, 935 F.2d 810, 812–13 (7th Cir. 1991). "[T]he exhaustion requirement enables courts to avoid deciding cases on constitutional grounds unnecessarily; during administrative proceedings the constitutional issue, or the entire case, for that matter, may be resolved favorably for the aggrieved party, obviating the need for the courts to address the constitutional claim." *Id.* at 813. *See also Diliberti v. Brown*, 583 F.2d 950, 951 (7th Cir. 1978) (Requiring "exhaustion would further 'the well-established and sound policy in the federal courts which seeks to avoid premature decisions of constitutional questions such as those raised in plaintiffs' complaint.'" (quoting *Champagne v. Schlesinger*, 506 F.2d 979, 984 (7th Cir. 1974))).

The Court pauses to note that counsel for Ms. Aguilar Gonzalez boldly states that there is a "now-settled due process principle that, at a § 1226(a) (or analogous) bond hearing, the government—not the detainee—must justify continued civil detention, typically by clear and convincing evidence, through individualized proof of flight risk or dangerousness." Dkt. 15 at 18 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213–14 (3d Cir. 2020); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 852–53 (E.D. Va. 2020); *Oscar M-S. v. Garland*, 21-cv-1341 (WMW/KMM), 2021 WL 6063232, at *4–6 (D. Minn. Dec. 20, 2021); *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 800 (W.D.N.Y. 2019); *Banegas v. Decker*, 21-CV-2359 (VEC), 2021 WL 1997033, at *8–10 (S.D.N.Y. May 7, 2021)).

In this judicial circuit—from which none of the cited cases were issued—there is no such settled principle. Even the circuit courts that have addressed the question of who bears the burden of proof at a § 1226(a) bond hearing have not resolved the question uniformly.[3]

The Court expects better conduct from lawyers admitted to practice before it. Counsel is reminded that, by presenting a motion to the Court, she is "certif[ying] that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). Counsel is also reminded of her duty to the Court, contained in The Standards for Professional Conduct Within the Seventh Federal Judicial Circuit to "not knowingly misrepresent, mischaracterize, misquote, or miscite facts or authorities in any oral or written communication to the court." *See id.* (avail. at https://www.ca7.uscourts.gov/pages/LandingPage.php?page=standards-for-professional-conduct).

Returning to the agency competency factor, Ms. Aguilar Gonzalez seeks release from custody or a bond hearing based on different considerations than the one she received. The BIA can provide that relief and is well equipped to determine whether she is entitled to it under the

---

[3] *Compare Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) ("We therefore conclude that the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)."); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2d Cir. 2020) ("[T]he district court correctly ordered a new bond hearing where the Government bore the burden of proof."), *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022) ("[E]ven when there are deficiencies in individual § 1226(a) proceedings, they may be redressable through means short of major changes to the burden of proof."); *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) ("Espinoza did not meet his burden to show a likelihood of success on his claim that requiring an alien in a § 1226(a) bond hearing to show, by a preponderance of evidence, that he is not a danger to the community nor a flight risk violates an alien's rights under the Due Process Clause."); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) ("[U]nder § 1226(a) the burden remains on the detainee at all times. [W]e perceive no problem . . . .").

Immigration and Nationality Act and applicable regulations. The Court finds that it is prudent to allow the BIA to address Ms. Aguilar Gonzalez's claims from that vantage point before wading into a complicated constitutional question on which there is no Seventh Circuit precedent and on which the federal courts more broadly are divided.

### 3.     Futility and Bias

The third individual interest—avoiding futility or bias—is a neutral factor. Ms. Aguilar Gonzalez argues that the Immigration Judge was not a neutral arbiter because the Immigration Judge decided against her even though she submitted over 80 pages of supporting documents. To adopt Ms. Aguilar Gonzalez's view would require the Court to review the substance of the Immigration Judge's decision and reweigh the evidence presented.[4]

Ms. Aguilar Gonzalez also contends that the Executive Office for Immigration Review is a biased institution that is incapable of providing her with a constitutional bond hearing. She points to the termination of many immigration judges, advertisements for "deportation judges," the hiring of temporary immigration judges without immigration law experience, and "agenda-driven policies." (Dkt. 15 at 20–21).

Despite Ms. Aguilar Gonzalez's protestations, the Court takes judicial notice of cases filed in this judicial district where recently filed notices indicate that the petitioners were released after being provided bond hearings pursuant to writs of habeas corpus. *See Jiminez Bravo v. Swearingen*, No. 2:26-cv-00107-JRS-MKK, dkt. 13 (S.D. Ind. Mar. 19, 2026); *Joseph v. Swearingen*, No. 2:26-

---

[4] Ms. Aguilar Gonzalez also takes a non-exhaustive list of permissible considerations from *In re Guerra* and asserts that they are required factors. *Compare In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) ("Immigration Judges may look to a number of factors in determining whether an alien merits release from bond, as well as the amount of bond that is appropriate. These factors may include any or all of the following . . . ") *with* dkt. 15 at 8–9 ("Bond determinations under § 1226(a) require an individualized assessment of specific factors, including family ties, length of residence, compliance history, and avenues for relief." (citing *In re Guerra*, 24 I. & N. Dec. at 40)).

cv-147-JRS-MKK, dkt. 12 (S.D. Ind. Mar. 19, 2026); *Ramirez Montes v. Swearingen*, No. 2:26-cv-176-JPH-MJD, dkt. 13 (S.D. Ind. Mar. 25, 2026).

Certainly, the Court must be concerned about allegations of biased institutions. While doing so, however, the Court tempers this with the notices from cases in this district, which show that denial of bond after a writ of habeas corpus is granted is not automatic. Ms. Aguilar Gonzalez may be concerned that she will not receive a fair result from the BIA, but the Court finds that institutional bias cannot be wholesale assumed. Thus, the Court finds this factor to fall neutrally between requiring and excusing exhaustion.

### 4.    Constitutional Questions

Finally, the fourth individual interest—addressing constitutional issues—weighs in favor of requiring exhaustion. It is true that Ms. Aguilar Gonzalez asks this Court to resolve a constitutional question. However, as discussed above, the constitutional claim overlaps substantially with a specific administrative decision. She asks the Court to find that the Immigration Judge's bond denial deprived her of due process because the judge made a decision that was unsupported by the evidence. The BIA is as capable as this Court of evaluating the decision on those grounds.

If Ms. Aguilar Gonzalez has asked the Court to address a constitutional question that does not overlap with the merits of the Immigration Judge's decision, that question is who should bear the burden of proof in the bond determination. As discussed above, the answer to that question is unsettled in this jurisdiction. The Court finds it prudent to permit the BIA an opportunity to address Ms. Aguilar Gonzalez's claims through the administrative review process. Exhaustion is the general rule, and it is especially appropriate here where the merits are unsettled.

The Court is sympathetic to the consequences of Ms. Aguilar Gonzalez's continued detention. But the law generally requires exhaustion of administrative remedies. Two of the four individual interests that could cause this Court to deviate from that general rule weigh in favor of requiring exhaustion. Another factor is neutral, and only the appellate timeline factor weighs in favor of excusing exhaustion—though it is unclear whether Ms. Aguilar Gonzalez has appealed the Immigration Judge's decision to the BIA. The Court therefore declines to exercise its discretion to excuse exhaustion.

## III.   CONCLUSION

The Court concludes that Petitioner Lusvy Roxana Aguilar Gonzalez has failed to exhaust her administrative remedies. Accordingly, for the reasons explained in this Order her Motion to Enforce Judgment and to Show Cause Re: Contempt Immediate Hearing Requested Dkt. [15] is **DENIED without prejudice**.

**IT IS SO ORDERED.**

Date: 4/20/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel